UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME A BEARDEN,<br><br>Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY,<br><br>Defendant. | Case No. 19-cv-04264-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 50 |

On June 17, 2020, Defendant County of Alameda filed the instant motion to dismiss plaintiff's third amended complaint ("TAC") for failure to remedy the issues identified in the Court's prior order and for failure to state a claim. Pursuant to Local Rule 7-1(b), the Court finds that it may determine the matter on the papers without oral argument and hereby vacates the July 24, 2020 hearing. The motion will be GRANTED.

**BACKGROUND**

The pertinent facts in this case are detailed in the Court's prior order, in which plaintiff's second amended complaint ("SAC") was dismissed. Dkt. No. 42 (Order Granting Mot. to Dismiss SAC). In plaintiff's SAC, he asserted four causes of action: (1) Government Code § 815.2; (2) Government Code § 815.6; (3) 42 U.S.C § 1981; and, (4) 42 U.S.C. § 1983. *Id.* at 2. The Court

dismissed, with prejudice, the § 815.6 claim. *Id.* at 8. The Court dismissed, without prejudice, plaintiff's § 815.2,[1] § 1981 and Title VII,[2] and § 1983 claims.[3] *Id.* at 5, 11, 13.

On May 29, 2020, plaintiff filed his TAC, now before the Court. Dkt. No. 48 (TAC). In it, plaintiff alleges four causes of action: (1) Government Code § 815.2; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1983 (Fourteenth Amendment violation); and (4) 42 U.S.C. § 1983 (policy or custom violation under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)). *Id.* at 7, 12, 16-17, 19.

Pursuant to Rule 12(b)(6), defendant moves the Court to dismiss, with prejudice, plaintiff's TAC for not curing the defects identified by the Court in its prior order, and thus failing to state a claim upon which relief can be granted. Dkt. No. 49 at 6 (Mot. to Dismiss TAC).

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. Pro. 8(a)(2). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a

---

[1] The Court granted plaintiff leave to amend to plead a specific tort injury. Dkt. No. 42 at 5 (Order Granting MTD SAC).

[2] The Court granted plaintiff leave to amend to add facts showing (1) the County of Alameda's specific policy or custom that violated plaintiff's constitutional rights; (2) the deprivation or denial of a right to constitute a § 1981 claim; and (3) a Title VII claim if plaintiff exhausted his administrative remedies. *Id.* at 10-11.

[3] The Court granted plaintiff leave to amend if he could allege (1) that he was not a "class of one" and that he was deprived of life, liberty, or property interest, and (2) an official policy or custom gave rise to his claim. *Id.* at 13.

formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. Violation of California Government Code § 815.2

Under the California Government Tort Claims Act, a public entity is not liable for any injury except as provided by statute. Cal. Gov. Code § 815.[4] A public entity may be subject to respondeat superior liability under § 815.2 for injury caused by an act or omission of an employee. Cal. Gov. Code § 815.2(a); see also *Mayfield v. County of Merced*, No. CV F 13-1619, 2014 U.S. Dist. LEXIS 79066, at *21 (E.D. Cal. June 6, 2014) (noting § 815.2 provides for respondeat superior liability for an employee's act or omission). To prevail under § 815.2, the plaintiff must establish tort liability. *See Thomsen v. Sacramento Metro. Fire Dist.*, No. 2:09-CV-01108, 2009 U.S. Dist. LEXIS 97242, at *45-46 (E.D. Cal. Oct. 20, 2009) (barring a plaintiff from bringing a § 815 claim for a non-tort cause of action); *Mikkelsen v. State of California*, 59 Cal. App. 3d 621, 626-27 (1976) (stating the Tort Claims Act—Section 815—is "a special statute regulating the tort liabilities and immunities of public entities and employees").

In its prior order, the Court granted plaintiff leave to amend his § 815.2 claim if he could

---

[4] Under § 815.2, "in the absence of a statute[,] a public entity cannot be held liable for an employee's act or omission where the employee himself would be immune." In California, "courts have held on many occasions that a public employee is immune from liability for his discretionary acts within the scope of his employment even though the discretion be abused." *Id.* Thus, public entities are only liable in tort for the non-discretionary acts or omissions of their employees that are "within the scope of [their] employment." *Id.*

3

plead a specific tort injury. In his TAC, plaintiff argues defendant is liable for three distinct torts: (1) invasion of privacy (under two theories of liability – public disclosure of private fact[5] and invasion into private places[6]); (2) intentional infliction of emotional distress;[7] and (3) deliberate indifference.[8] Plaintiff has failed to plead sufficient facts to demonstrate he suffered any three of the alleged torts.

### A. Invasion of Privacy

Plaintiff's invasion of privacy tort fails under both theories of liability. Plaintiff states Ms. Bernal invaded plaintiff's privacy when yelling: "You needed to be under IA investigation. You needed to be fired." Dkt. No. 48 at 9 (TAC). He further explains "Bernal invaded [plaintiff's] . . . privacy by berating [him] . . . about Private Employment [sic] issues that had nothing to do with her." *Id.* at 9. The public disclosure of private fact claim fails because Ms. Bernal's statements were her opinions about what should happen to plaintiff, not disclosures of "private employment issues." Dkt. No. 48 at 9 (TAC). The statements were heard by a few employees, not a large group of people, and thus were not sufficiently public. *See Ignat v. Yum! Brands, Inc.*, 214 Cal.App.4th

---

[5] In California, the following elements must be satisfied to successfully plead an invasion of privacy claim under the public disclosure of private fact tort: "'(1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern.'" *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007) (*quoting Shulman v. Group W. Productions, Inc.,* 18 Cal. 4th 200, 214 (1998)).

[6] In California, the following elements must be satisfied to successfully plead an invasion of privacy claim under the intrusion into private places tort: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *In re Google Location History Litigation*, 428 F.Supp.3d 185, 196 (N.D. Cal. 2019) (quoting *Shulman*, 18 Cal. 4th at 231).

[7] In California, the following elements must be satisfied to successfully plead a tort claim for intentional infliction of emotional distress : "(1) outrageous conduct by defendants, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." *Board v. Employers Casualty Co.,* 164 Cal.App.3d 602, 616 (1985).

[8] The Eighth Amendment's proscription of cruel and unusual punishment requires that prison officials not be deliberately indifferent to serious risks to inmate safety. To state a claim for deliberate indifference to a prisoner's safety, the prisoner needs to allege that prison officials knew of an objectively serious risk of harm and acted with deliberate indifference to it. *See Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

808, 820 (2013) ("Liability for the common-law tort requires publicity; disclosure to a few people in limited circumstances does not violate the right."). Ms. Bernal also did not intrude on a private place—plaintiff was at work at the time of the incident. *See Sanders v. Am. Broadcasting Companies, Inc.*, 20 Cal.4th 907, 915 (1999) ("The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place . . . ."). Nor could Ms. Bernal's remarks be construed as "highly offensive to a reasonable person." *In re Google Location History Litig.*, 428 F.Supp.3d 185, 196 (N.D. Cal. 2019). To determine offensiveness, the Court needs to "consider the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Miller v. Nat'l Broadcasting Co.*, 187 Cal.App.3d 1463, 1483-1484 (1986). The encounter between Ms. Bernal and plaintiff was at most an uncomfortable yet fleeting interaction that does not rise to the level of offensiveness required for an invasion of privacy claim.

### B. Intentional Infliction of Emotional Distress (IIED)

The Court acknowledges plaintiff's representation that his encounter with Ms. Bernal was unpleasant; however, Ms. Bernal's behavior was not so egregious to be considered "utterly intolerable in a civilized community,"[9] and plaintiff provides no proof of suffering so severe that "no reasonable [person] in a civilized society should be expected to endure it."[10] Thus, plaintiff fails to establish the elements necessary to plead an IIED claim.

### C. Deliberate Indifference

Plaintiff's deliberate indifference claim is not applicable, because he is not an inmate or detainee; prison officials can be held liable under the Eighth Amendment for acting with deliberate indifference to *inmates, not coworkers*. *See Farmer,* 511 U.S. 825, 833 (1994); *see also Toguchi v.*

---

[9] *Board*, 164 Cal.App.3d at 616.

[10] *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009).

5

*Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (finding that a prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety").

Since plaintiff does not present facts sufficient to establish any of the torts he pleads, the Court DISMISSES, WITH prejudice, plaintiff's § 815.2 claim.

**II.    Violation of 42 U.S.C. § 1981**

In the Court's prior order, plaintiff was directed to bring any subsequent 42 U.S.C. § 1981 and Title VII claims separately. Plaintiff has not done so in his TAC. However, even if he were to plead these claims separately, they would still fail.

**A.  42 U.S.C. § 1981 Claim**

"Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences." *Flores v. City of Westminster*, 873 F.3d 739, 752 (9th Cir. 2017) (citing 42 U.S.C. § 1981). To bring a claim under § 1981, a plaintiff "must show 'intentional' or 'purposeful' racial discrimination." *Pendleton v. City of Spokane Police Dep't, No.* 2:18-cv-0245, 2019 WL 320581, at *6, 2019 U.S. Dist. LEXIS 11969, at *14 (E.D. Wash. Jan. 24, 2019). To allege intentional discrimination under § 1981, the plaintiff must show he: (1) is a member of a protected class; (2) attempted to contract for certain services; (3) was denied the right to contract for those services; and (4) was deprived of those services while similarly situated persons outside the protected class were not, or received services in a hostile manner that is objectively discriminatory. *Id.* at *6, 2019 U.S. Dist. LEXIS 11969, at *15, 2019 WL 320581.

To succeed on a § 1981 claim against a local government entity, "a plaintiff must prove that the entity violated his constitutional rights by acting pursuant to an official municipal policy." *Id.* at *8, 2019 U.S. Dist. LEXIS 11969, at *19, 2019 WL 320581; *see also Monell*, 436 U.S. at 694 (establishing that claimants suing state actors must show the alleged injury stemmed from a "policy or custom" of the state actor). Thus, § 1981 "preserves the 'policy or custom' requirement in suits against state actors" instead of imposing respondeat superior liability. *Federation of African Am.*

*Contrs. v. City of Oakland*, 96 F.3d 1204, 1215 (1996).

In its prior order, the Court granted plaintiff leave to amend his § 1981 claim to add facts showing (1) the County of Alameda's specific policy or custom that violated plaintiff's constitutional rights; and (2) the deprivation or denial of a right to constitute a § 1981 claim. Dkt. No. 42 at 10-11 (Order Granting Mot. to Dismiss SAC). In his TAC, plaintiff argues the defendant should be held liable under § 1981 because: (1) Mr. Zamora "clearly watched and allowed[] Bernal to verbally attack" the plaintiff by "shouting obscenities"; (2) Mr. Zamora watched as Ms. Bernal invaded plaintiff's "privacy[] about private employment issues"; (3) Mr. Zamora, after being asked if he was going to write up Ms. Bernal for her conduct, told plaintiff "you were both loud"; and, (4) had plaintiff acted in the same manner as Ms. Bernal, he would have been escorted "off the premises, with great haste for being aggressive and dangerous" and would have been "placed on administrative leave and more than likely fired" because of "a blatant racist double standard" since plaintiff is African American. Dkt. No. 48 13-14 (TAC).

Plaintiff fails to show Ms. Bernal or Mr. Zamora were acting in accordance with an official policy set by defendant and that his constitutional rights were violated because of their actions. Plaintiff attaches Alameda County's workplace violence policy in support of his claim that Mr. Zamora had the responsibility of preventing Ms. Bernal's conduct and failed to do so; but Mr. Zamora had no way of anticipating Ms. Bernal's conduct, nor did Ms. Bernal engage in any of the three types of violence that the policy is outlined to protect. Dkt. No. 48 at 28 (TAC – Ex. 4). The California Code of Regulations for juvenile facilities, which plaintiff also attaches to his TAC, provides no additional support for plaintiff's claims. *Id.* at 34 (TAC – Ex. 5). Plaintiff further argues Ms. Bernal was required to "write a statement explaining [in] great detail her reasons for her attack," and that if no such incident report was written then plaintiff's "due process was violated," but if a report were filed, Ms. Bernal's "guilt will fully be admitted." *Id.* at 15. Plaintiff makes no showing any policy required Ms. Bernal to document the incident, or that he knows whether any statement was in fact made. Such conclusory allegations do not make for a successful claim.

Nor are plaintiff's claims that he was treated differently on account of his race substantiated. Simply stating his constitutional rights were violated due to "a blatant racist double standard" does

7

not make it so. Dkt. No. 48 13-14 (TAC). Plaintiff does not allege Ms. Bernal or Ms. Zamora's race, nor does he mention anything spoken or done by either of them that was race motivated. Plaintiff argues "[n]o other officer has been treated so severely directly in real time in front of an IS II Supervisor and nothing was done." Dkt. No. 48 at 14 (TAC). These are conclusions without factual support.

Plaintiff fails to remedy the issues the Court granted him leave to amend in its prior order. Thus, the Court DISMISSES, WITH prejudice, plaintiff's § 1981 claim.

### B. Title VII Claim

"Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case. Both require proof of discriminatory treatment and the same set of facts can give rise to both claims." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). Additionally, Title VII requires an individual to exhaust administrative remedies before filing a lawsuit in court. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454, 128 S. Ct. 1951, 170 L.Ed.2d 864 (2008). This includes the requirement to bring a discrimination charge before the Equal Employment Opportunity Commission (EEOC) within 180 days of the discriminatory act and to sue within 90 days of obtaining an EEOC right-to-sue-letter. *Id.* at 454, 128 S. Ct. 1951; 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1).

Upon dismissing plaintiff's SAC, the Court granted plaintiff leave to amend his Title VII claim to show (1) defendant's specific policy or custom violated plaintiff's constitutional rights, (2) plaintiff experienced a constitutional violation that could give rise to a § 1983 claim, and (3) plaintiff had exhausted his administrative remedies before filing his Title VII claim with this Court. Plaintiff provides no evidence he has exhausted his administrative remedies. Even if plaintiff had gone through the necessary channels before filing with this Court, he fails to show a policy or custom that violated his constitutional rights, or that his rights were violated. Since plaintiff has not made any of the required amendments, the Court DISMISSES his Title VII claim WITH prejudice.

### III. Violation of 42 U.S.C. § 1983

42 U.S.C. § 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (internal quotation omitted). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Bowell v. Montoya*, No. 1:17-cv-00605, 2018 WL 4826054, at *2, 2018 U.S. Dist. LEXIS 171229 at *6 (E.D. Cal. Oct. 3, 2018) (internal quotation omitted). To prevail on a 1983 claim, plaintiff must establish: (1) a constitutional right was violated and (2) that violation was done under color of state law. *Long*, 442 F.3d at 1185. As in his SAC, plaintiff argues violations under the Fourteenth Amendment to meet prong one.

There is no respondeat superior liability under § 1983. *McGee v. California*, No. 2:16-cv-1796, 2018 U.S. Dist. LEXIS 33889, at *6 (E.D. Cal. Feb. 28, 2018). As such, counties and municipalities can only be sued under § 1983 if plaintiff can show that his "constitutional injury was caused by an employee acting pursuant to the municipality's policy or custom." *Id.* (*citing Monell*, 436 U.S. at 691). To establish liability under *Monell*, a plaintiff must allege a policy or custom established by municipal policymakers and show that this policy or custom was the "moving force" behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). The plaintiff must prove that (1) the alleged violation resulted from a "longstanding policy or custom" established as the local government entity's standard procedure; (2) the decision-making official was a final policymaking authority whose acts could represent official policy; or (3) an official with final policymaking authority either delegated the authority to, or approved the decision of, a subordinate. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008).

Plaintiff brings two § 1983 claims in his TAC; the Court examines them together, since both are premised on Fourteenth Amendment violations. In its prior order, the Court granted plaintiff leave to amend his § 1983 claim to allege (1) that he was not a "class of one" and that he was deprived of life, liberty, or property interest, and (2) that an official policy or custom was in place giving rise to his claim. Dkt. No. 42 at 13 (Order Granting Mot. to Dismiss SAC).

1    Plaintiff fails to cure the defects previously highlighted by the Court. Plaintiff argues Ms. Bernal and Mr. Zamora were acting under the color of state law during the incident,[11] Mr. Zamora failed to stop Ms. Bernal's conduct and thus "tacitly assented" to it,[12] and defendant "tacitly authorized the continuing practice of misconduct" by failing "to discipline and retrain officers who acted unlawfully and outside of department policy." Dkt. No. 48 at 20 (TAC).

Plaintiff presents no facts indicating he was not a "class-of-one," as is necessary to bring a Fourteenth Amendment claim in this case. *See Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 605 (2008) ("[T]he class-of-one theory of equal protection . . . is simply a poor fit in the public employment context."). Instead, he solely focuses on how he was treated during the encounter.

Further, nothing in plaintiff's TAC suggests Ms. Bernal deprived him of his life or property. As for his liberty interests, these may be protected by "two sources—the Due Process Clause of the Constitution itself and the laws of the States." *Garrison v. Mcqueeney*, No. C 94-3595 THE, 1995 WL 39435, at *2 (N.D. Cal. Jan 27, 1995). Neither the Due Process Clause nor California state law protects plaintiff's rights to not be yelled at by a co-worker.

Moreover, just because both Ms. Bernal and Mr. Zamora are public employees does not mean a specific county policy gave rise to the claim in question. Ms. Bernal's individual grievances with the plaintiff do not amount to a policy perpetuated by defendant, and none of the Juvenile Justice Center's rules and regulations plaintiff includes in his TAC suggest any policy was the "moving force" behind plaintiff's alleged constitutional violation. Dkt. No. 48, 17-21 (TAC). Since plaintiff pleads no facts to show substantive proof of legal wrongdoing, the Court dismisses plaintiff's § 1983 claims with prejudice.

\\
\\
\\
\\

---

[11] Dkt. No. 48 at 18 (TAC).

[12] *Id.* at 19

\\

## CONCLUSION

All of plaintiff's causes of action are DISMISSED WITH prejudice.

**IT IS SO ORDERED**.

Dated: July 7, 2020

_____
SUSAN ILLSTON
United States District Judge